IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES A. McKNIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 06-0105 |
| | ) | |
| v. | ) | Judge Terrence F. McVerry |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| STATE FARM INSURANCE | ) | |
| COMPANY, | ) | Doc. Nos. 20, 24 |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

**I.  RECOMMENDATION**

It is respectfully recommended that the Motion for Summary Judgment filed by Plaintiff, James A. McKnight (Doc. No. 20) be granted, and that the Motion for Summary Judgment filed by Defendant, State Farm Mutual Automobile Insurance Company[1] (Doc. 24), be denied.

**II.  REPORT**

Plaintiff instituted this declaratory judgment action in the Court of Common Pleas of Allegheny County, Pennsylvania against Defendant, State Farm Mutual Automobile Insurance Company (hereinafter "State Farm"), seeking a declaration as to the rights and obligations of the parties regarding coverage for underinsured motorist ("UIM") benefits.  Defendant State Farm removed the declaratory judgment action to the United States District Court for the Western District of Pennsylvania on January 25, 2006, on the basis of diversity jurisdiction.  This Court has subject

---

[1]Although Defendant's correct name is State Farm Mutual Automobile Insurance Company (Ans. to Compl. ¶ 2), Defendant did not move to amend the caption.  Therefore, the caption of this Report and Recommendation uses the Defendant's name as set forth in the complaint.

matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a), 1441(b).  Venue in this District is proper under 28 U.S.C. § 1441(a).

The issue presented here is whether an application for reinstatement of automobile insurance signed by the insured prior to the effective date of the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), which contained only uninsured motorist ("UM") coverage limits, fulfills the writing requirement of 75 Pa. Cons. Stat. Ann. § 1734, to effectuate a reduction in UIM benefits.  Because the Court finds that no material issues of fact exist and Plaintiff James A. McKnight is entitled to judgment as a matter of law, the Court recommends Plaintiff's Motion for Summary Judgment be granted and Defendant State Farm's Motion for Summary Judgment be denied.

### A.    Facts and Procedural History

The relevant facts are not disputed.  Plaintiff, James A. McKnight, a resident of Butler County, Pennsylvania, was operating a motor vehicle at approximately 12:39 a.m. on September 11, 2004 in Marshall Township, Allegheny County, Pennsylvania.  (Compl. ¶ 3.)  The vehicle operated by Mr. McKnight was struck by a vehicle operated by Nicholas Slobodnyak, who was insured under a motor vehicle insurance policy issued by Travelers Insurance Company ("Travelers").  (Compl. ¶ 12.)  Travelers paid its remaining liability insurance limits of $ 98,023.71 to Plaintiff, in exchange for a release of Plaintiff's bodily injury claim against Slobodnyak, with the consent of State Farm. (Compl. ¶ 12.)

At all relevant times, James A. McKnight was the policyholder and named insured under the automobile insurance policy issued by State Farm.  The bodily injuries suffered by Plaintiff in the accident were severe and the medical costs exceeded the liability insurance limit paid by Travelers

and the UIM limit of the State Farm policy, which Plaintiff contends is $ 300,000 (three times $100,000, as he had three cars and stacking applied).  (Compl. ¶¶ 8, 17.)  Thus, Plaintiff submitted a claim for UIM benefits to State Farm in the amount of $ 300,000.  State Farm approved the UIM claim submitted by Plaintiff, but only in the amount of $ 45,000 (three times $15,000 with stacking).

Plaintiff and State Farm disagree as to the amount of UIM coverage in effect at the time of the accident.  Plaintiff contends that he has UIM benefits equal to his bodily injury liability limits; State Farm submits that Plaintiff elected reduced UIM coverage in the amount of $15,000/30,000. Consequently, Plaintiff instituted this declaratory judgment action to have the Court determine  the amount of the UIM coverage available to him under the State Farm policy.[2]  The parties have filed cross motions for summary judgment and responses in opposition thereto.  The motions and responses have been fully briefed and are now ripe for disposition.

**B.    Standard of Review**

In a declaratory judgment action, the standard for granting summary is the same as for any other type of action.  *Transguard Ins. Co. of Am., Inc. v. Hinchey*, 464 F.Supp.2d 425, 429 (M.D.Pa. 2006) (citing *Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Marketing Bd.,* 298 F.3d 201, 210 n. 12 (3d Cir. 2002)).  Summary judgment is appropriate if, drawing all inferences in favor of the nonmovingparty, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c).  Summary judgment may

---

[2]The parties have resolved the UIM claim to the extent of $ 45,000, the amount acknowledged by State Farm as due and owing.  Thus, the dispute in this case concerns the balance due, $ 255,000, the difference between the amount claimed by Plaintiff, and the reduced UIM coverage amount that State Farm maintains is in effect.

be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

More specifically, the moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a *genuine issue for trial*" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis added by *Matsushita* Court). An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When the parties have filed cross-motions for summary judgment, as in this case, the summary judgment standard remains the same. *Transguard Ins. Co.,* 464 F.Supp.2d at 430 (citing *Appelmans v. City of Phila.,* 826 F.2d 214, 216 (3d Cir.1984). "When confronted with cross-motions for summary judgment, . . . 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard.'" *Id.* (quoting *Marciniak v. Prudential Fin. Ins. Co. of Am.,* No. 05-4456, 184 Fed. Appx. 266, 270 (3d Cir. June 21, 2006)). "If review of [the] cross-motions reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts." *Id.* (citing *Iberia Foods Corp. v. Romeo,* 150 F.3d 298, 302 (3d Cir. 1998)).

## C.      Discussion

This case presents two issues for resolution: (1) Whether the application for reinstatement of insurance submitted by Plaintiff on May 8, 1984 to State Farm (the "1984 Application") constitutes a "writing" within the meaning of Section 1734 of the Pa. MVFRL;[3] and, if the first question is answered in the negative, then (2) whether issuance of the Section 1791 notice and payment of insurance premiums at reduced coverage limits constitutes an effective written reduction of UIM benefits under Section 1734 of the MVFRL.  The Pennsylvania Supreme Court has not yet ruled on either of these issues.  Therefore, this Court must predict how the Pennsylvania Supreme Court would rule if faced with these issues.  *Covington v. Cont'l Gen. Tire, Inc.,* 381 F.3d 216, 218 (3d Cir. 2004) (citing *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1046 (3d Cir.1993)).[4]

The resolution of this declaratory judgment action turns on the proper analysis and application of the MVFRL, in particular, Sections 1734 and 1791 of Title 75, Pa. Cons. Stat. Ann. Prior to the enactment of the MVFRL in 1984, automobile insurance in Pennsylvania was governed by the Pennsylvania No-Fault Motor Vehicle Act , which required only UM coverage, 40 P.S. §§ 1009.101 *et seq.* (repealed), and the Uninsured Motorist Act, 40 P.S. Ann. § 2000; *see also Lewis v. Erie Ins. Exch.,* 793 A.2d 143, 149-51 (Pa. 2002) (discussing history of motor vehicle insurance law in Pennsylvania as proscribed by Uninsured Motorist Act, No-Fault Motor Vehicle Act, and

---

[3]State Farm admits that the only "writing" in its possession that has been signed by Plaintiff is the 1984 Application.  (Def.'s Mot. for Summ. J., ¶ 15;Def.'s Concise Stmt. of Material Facts, ¶ 24.)

[4]In so doing, the Court "'must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.'  The decision of an intermediate state court is particularly relevant and 'is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Covington,* 381 F.3d at 218 (quoting *Packard,* 994 F.2d at 1046; *C.I.R. v. Bosch's Estate,* 387 U.S. 456, 465, (1967)).

MVRFL).  When the MVFRL was enacted in 1984,[5] the Pennsylvania legislature added UIM coverage and made it mandatory, along with UM coverage.  *See* Historical and Statutory Notes to 75 Pa. Cons. Stat. Ann. § 1731 (Act 1990-6 Legislation); *Lewis,* 793 A.2d at 150-51.

Subsequently, the Pennsylvania legislature amended the MVFRL in 1990, making UM and UIM coverage optional, but required insurers issuing motor vehicle liability insurance policies in Pennsylvania to offer UM and UIM coverages in amounts as provided in Section 1734.  *See* 75 Pa. Cons. Stat. Ann. § 1731(a) (West 2006).[6]   Section 1734 of the MVFRL, as amended in 1990, provides:

> **§ 1734.  Request for lower limits of coverage**
> A named insured may request in writing the issuance of coverages under section 1731 (relating to availability, scope and amount of coverage) in amounts equal to or less than the limits of liability for bodily injury.

75 Pa. Cons. Stat. Ann. § 1734 (West 2006).[7]   The Pennsylvania Superior Court has held that to

---

[5]The MFVRL was enacted on February 12, 1984, but did not take effect until October 1, 1984.

[6]Section 1731(a), as amended in 1990, provides in relevant part:

> **(a) Mandatory offering.**– No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, . . . unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage).  Purchase of uninsured motorist and underinsured motorist coverages is optional.

75 Pa. Cons. Stat. Ann. § 1731(a) (West 2006).

[7]This version of Section 1734 was effective July 1, 1990.  When the MVFRL originally took effect on October 1, 1984, Section 1734 read:

> **§ 1734.  Request for lower or higher limits of coverage**
> A named insured may request in writing the issuance of coverages under section 1731 (relating to scope and amount of coverage) in amounts less than the limits of liability for bodily injury but in no event less than the amounts required by this chapter for bodily injury.  If the named insured has selected uninsured and underinsured motorist coverage in connection with a policy previously issued to him b[y] the same insurer under section 1731, the coverages offered need not be provided in excess of the limits of

prove a valid reduction under Section 1734, an insurer must demonstrate two things: (1) that the insured had notice as to the limits and coverage available under the MVFRL; and (2) that the insured requested in writing lower limits of UM/UIM coverage. *Breuninger v. Pennland Ins. Co.,* 675 A.2d 353, 357 (Pa. Super. 1996). As to the second requirement, the Pennsylvania Supreme Court in *Lewis* noted, in dicta, that "requests for specific limits coverage [under Section 1734], in contrast to outright waiver/rejection [under Section 1731], require not only the signature of the insured, but also, an express designation of the amount of coverage requested, thus lessening the potential for confusion." 793 A.2d at 153. Thus, without a written request from the named insured for reduced coverage limits, the insured's alleged selection of reduced UM/UIM coverage is a nullity, and the amount of UM/UIM coverage is deemed to be equal to the limits of liability for bodily injury. *Nationwide Mut. Ins. Co. v. Heintz,* 804 A.2d 1209, 1216 n. 7 (Pa. Super. 2002) (citing *Motorists Ins. Cos. v. Emig,* 664 A.2d 559, 566 (Pa. Super. 1995) ("*Emig*"); *Cebula v. Royal & SunAlliance Ins. Co.,* 158 F.Supp. 2d 455, 462 (M.D.Pa. 2001)); *see also Nationwide Ins. Co. v. Resseguie,* 980 F.2d 226, 231 (3d Cir. 1992).

The underlying purpose of the Pennsylvania legislature in enacting the MVFRL was to make automobile insurance coverages more affordable to Pennsylvania drivers, thereby reducing the number of uninsured motorists. Norton, Lynette, *Insurance Coverage in Pennsylvania,* § 18.B at

---

liability previously issued for uninsured and underinsured motorist coverage unless the named insured requests in writing higher limits of liability for those coverages.

*See* Historical and Statutory Notes to 75 Pa. Cons. Stat. Ann. § 1734 (West 2006).

258 (PBI 1997).[8]   The Pennsylvania Superior Court noted that the MVFRL is to be construed liberally in order to promote justice and to give effect to its objects, one of which is affording the injured insured the greatest possible coverage.  *Emig,* 664 A.2d at 566 (citations omitted).  In close or doubtful cases, the Superior Court opined that the intent of the legislature and the language of insurance policies must be construed in favor of coverage for the insured.  *Id.*  (citations omitted). The subsequent 1990 amendments to the MVFRL, which included making the purchase of UM and UIM coverage optional, were also designed by the Pennsylvania legislature to enhance the ability of insurance companies to control costs.  *Lewis,* 793 A.2d at 150 (footnotes omitted).

In the case at bar, the 1984 Application provides for limits of liability for bodily injury in the amount of $100,000/300,000/50,000.  (Ex. B to Def.'s Mem. in Support of Mot. for Summ. J.) The 1984 Application also contains a line for UM limits, and a handwritten notation on that line indicates coverage limits of "15/30", *i.e.,* $15,000 per person and $30,000 per accident.[9]  (*Id.*) Conspicuous by its absence is any provision for UIM coverage limits on the 1984 Application.[10]  In

---

[8]Specifically, the legislative purpose has been described as follows:
> The repeal of the No-Fault Act and the enactment of the MVFRL reflected a legislative concern for the spiraling consumer cost of automobile insurance and the resultant increase in the number of uninsured motorists driving on public highways.  The legislative concern for the increasing cost of insurance is the public policy that is to be advanced by statutory interpretation of the MVFRL.  This reflects the General Assembly's departure from the principle of "maximum feasible restoration" embodied in the now defunct No-Fault Act.

*Paylor v. Harford Ins. Co.,* 640 A.2d 1234, 1235 (Pa. 1994); *see also Motorists Ins. Cos. v. Emig,* 664 A.2d 559, 566 (Pa. Super. 1995) (citations omitted) ("intent of the General Assembly in enacting the MVFRL was to reduce the rising cost of purchasing motor vehicle insurance.")

[9]Plaintiff testified at his deposition that he did not write "15/30" next to UM limits on the 1984 Application.  *See* J. McKnight Dep. at 21.

[10]Under the applicable law at the time, UIM coverage was not required.  According to State Farm, its policy at that time (pre-MVFRL) was to provide UIM coverage to all of its insureds in an

addition, Plaintiff testified at his deposition that neither his insurance agent nor anyone in the agent's office ever described or discussed UM or UIM coverage with him.  (J. McKnight Dep. at 18.)

The 1984 Application was signed, and coverage was provided thereunder, prior to the effective date of the MVFRL.  Following the enactment of the MVFRL, State Farm forwarded Section 1791 notices to all of its insureds.[11]  (Def.'s Concise Stmt. of Material Facts, ¶ 12 (citing Lenard Aff. I, ¶ 15); Def.'s App. Ex. E.)   Pursuant to Section 1791, if the insurer provides to its insureds or new applicants the "Important Notice" set forth in the statute, including complying with the type-set and font requirements,  then the presumption arises that the insured has been advised of the benefits and limits available under the MVFRL. 75 Pa. Cons. Stat. Ann. § 1791 (West 2006). The Important Notice provided by State Farm to its insureds after the enactment of the MVFRL states, in pertinent part:

### Important Notice

Insurance companies operating in the Commonwealth of Pennsylvania are required by law to make available for purchase the

---

amount equal to the level of UM coverage selected in their initial applications.  (Def.'s Concise Stmt. of Material Facts, ¶ 8 (citing Affidavit of Eugene Lenard dated Oct. 24, 2006 ("Lenard Aff. I"), ¶ 6).)   The face of the 1984 Application provides no indication that UIM coverage was being provided or selected.

[11]In 1984, State Farm submits that it forwarded the Section 1791 notice to all of its insureds using an automated mailing system to generate the requisite notice forms with every premium renewal notice.  According to State Farm, this procedure had built in safeguards to ensure that the equipment operated properly and that the count of renewal notices matched the count of the inserts and the postage meter.  (Lenard Aff. I, ¶¶ 15-20.)  This procedure has been found to be adequate to establish that the Section 1791 notice was sent to State Farm's insureds.  *Clifford v. Prudential Prop. & Cas. Ins. Co.,* No. 399-CV-1788, 2001 WL 1076582, at *4-5 (M.D.Pa. Aug. 28, 2001) (insurer does not have to produce a signed § 1791 form in order to establish one was sent to insured; all that is required is that insurer demonstrate that it had a general procedure in place to provide the § 1791 notice and that the insured was on the mailing list).  In addition, Mr. McKnight testified at his deposition that he did not have a problem receiving mail at his home address.  (J. McKnight Dep. at 15.)  Nonetheless, Mr. McKnight stated he did not recall actually receiving any renewal notices or declaration pages in the mail from State Farm prior to the accident.  (J. McKnight Dep. at 25-26.)

following benefits for you, your spouse or other relatives or minors in your custody or in the custody of your relatives, residing in your household, occupants of your motor vehicle or persons struck by your motor vehicle:

. . .

(6)    Uninsured, underinsured, and bodily injury liability coverage up to at least $100,000 because of injury to one person in any one accident and up to at least $300,000 because of injury to two or more persons in any one accident or at the option of the insurer, up to at least $300,000 in a single limit for these coverages, except for polices issued under the Assigned R isk Plan.   Also, at least $5,000 for damage to property of others in any one accident.

Additionally, insurers may offer higher benefit levels than those enumerated [above] as well as additional benefits.  However, an insured may elect to purchase lower benefits levels than those enumerated [above].

Your signature on this notice or your payment of any renewal premium evidences your actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits you have selected.

State Farm "Important Notice" dated 8/84 (Ex. B to Lenard Aff. I).  If the insurer strictly complies with the notice requirements of Section 1791, then the notice requirement of Section 1734 is deemed to have been satisfied.  *Breuninger,* 675 A.2d at 356-57.

In 1984-85, State Farm did not  require that its Section 1791 notices be signed and returned by its insureds.  (Lenard Aff. I, ¶ 21.)  Moreover, State Farm does not have in its possession any Section 1791 notices signed by Mr. McKnight in the years 1984-95, or anytime subsequent thereto. (*Id.*, ¶ 22.)

Both issues currently before the Court involve the second requirement of Section 1734–a written request signed by the insured for lower limits of UM/UIM coverage.   To resolve the first

10

issue, the Court must determine whether the 1984 Application fulfills the writing requirement of Section 1734. Plaintiff argues that the 1984 Application for Reinstatement does not constitute a "writing" within the meaning of Section 1734, and therefore, the UIM limit in effect on the date of the accident was equal to the bodily injury coverage limits under the policy. In support of this position, Plaintiff submits that the 1984 Application was not, by its terms, an application for insurance, but instead, was an application for reinstatement of a pre-existing policy which did not have UIM coverage as part of the policy. Plaintiff further submits that the 1984 Application signed by him clearly shows that UIM coverage was not part of the policy that Mr. McKnight was seeking to reinstate, as it does not list UIM coverage, but rather, contains only a reference to UM coverage, next to which appears "15/30" in handwritten form. (Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. at 3.) Relying on *Emig* and *Nationwide Ins. Co. v. Resseguie, supra*, Plaintiff submits that his signature on the 1984 Application, which lacks any expression of a desire for reduced UIM coverage, does not establish a legally enforceable write-down of UIM limits. Thus, Plaintiff maintains that after the MVFRL was enacted, when State Farm began providing UIM coverage to Mr. McKnight, it was obligated to obtain a signed writing indicating Plaintiff's choice of UIM limits. Having failed to do so, Plaintiff contends his UIM limit is equal to the limit of liability for bodily injury.

On the other hand, State Farm argues that the 1984 Application for Reinstatement constitutes a "writing" within the meaning of Section 1734 because it is clearly signed by the insured, James A. McKnight, the insured admits that it is his signature that appears on the 1984 Application for Reinstatement, and the line for "UM/UIM" coverage clearly contains the notation "15/30", evidencing his desire for those UM/UIM limits. In support of this position, State Farm cites *State Farm Mut. Auto. Ins. Co. v. Ciccarella,* No. 01-1211, 2002 WL 827138 (E.D.Pa. May 1, 2002).

11

Thus, State Farm contends, Plaintiff made a valid specific-limits election of UM/UIM coverage at the time he completed his 1984 Application, and to hold otherwise would contravene the language of Section 1734, as well as the opinion set forth by the Pennsylvania Supreme Court in *Lewis v. Erie Ins. Exch., supra.* (Def.'s Mem. in Opp'n to Pl.'s Mot. for Summ. J. at 7.) Citing *State Farm Mut. Auto. Ins. Co. v. Gillespie*, 342 F.Supp. 2d 317 (E.D.Pa. 2004) for support, Defendant submits that the fact that the 1984 Application predates the MVFRL is of no consequence in determining the validity of the application as a Section 1734 writing. As to the notice prong of Section 1734, State Farm contends that the procedures it used to distribute the Section 1791 notice to its insured were adequate to establish that Plaintiff received the renewal notices and Important Notice. Moreover, State Farm submits that there is no reason to believe that Plaintiff did not receive 22 years of declaration pages and policy renewal notices providing UM/UIM limits of $ 15,000/30,000 which were sent to his home address.[12] Thus, State Farm contends that each time Plaintiff paid his insurance premium, he knowingly and intelligently selected lower UM/UIM limits.

Only a few courts have addressed whether a selection of UM/UIM coverage limits in a pre-MVFRL insurance policy was sufficient to constitute a "writing" for purposes of Section 1734, after the effective date of the MVFRL. In this regard, the Court finds persuasive the Pennsylvania Superior Court's decision in *Tukovits v. Prudential Ins. Co. of Am.,* 672 A.2d 786 (Pa.Super. 1996), *appeal denied* 685 A.2d 547 (Pa. 1996),[13] and the decision of the United States District Court in

---

[12]State Farm actually produced renewal notices for the period November 1997 to November 2005 that were sent to Mr. McKnight. (Def.'s App., Ex. C.) According to State Farm, the renewal notices for earlier years were purged from its files during the ordinary course of business.

[13]Although not expressly overruled by the Pennsylvania Supreme Court, the Superior Court's decision in *Tukovits* on the Section 1791 notice issue, *i.e.,* applying a "totality of the circumstances" analysis to the issue of whether the insured knowingly and intelligently made an election in writing for

*Dang v. State Farm Mut. Auto. Ins. Co.*, No. 96-411, 1996 WL 421942 (E.D.Pa. Jul. 19, 1996).

In *Tukovits,*[14] the Pennsylvania Superior Court rejected the insurer's additional argument that a policy issued prior to the MVFRL which provided UM/UIM coverage constituted a prior selection of lower UM/UIM limits such that Section 1734 (as originally enacted in 1984) required the insured to make a written request for any desired increase in his previously chosen UM/UIM limits.  672 A.2d at 791.  In so doing, the Superior Court held that the insurer's argument was not supported by a fair reading of Section 1734.  The court reasoned that the pre-MVFRL policy was not issued under Section 1731, since that section did not come into existence until October 1, 1984, and therefore, with the first policy renewal subsequent to the effective date of the MVFRL, the insurer was required to provide UM/UIM coverage equal to bodily injury coverage unless the insured voluntarily and knowingly reduced his UM/UIM coverage in writing.  *Id.*

Similarly in *Dang,* the district court considered the effect of the enactment of the MVFRL on an automobile policy that was already in existence.  Under this pre-MVFRL policy, the insured had selected UM/UIM coverage limits of $15,000/30,000.  The insurer in that case (also State Farm) argued that because the insured selected UM/UIM coverage in connection with the policy previously issued to him by the same insurer and he never requested in writing higher limits of liability for UM/UIM coverage, then pursuant to Section 1734, the $15,000/30,000 limits still applied.  Citing *Tukovits,* the district court in *Dang* rejected this argument on the basis that the policy could not have

---

lower UM/UIM coverage, was deemed to be effectively overruled by the Pennsylvania Supreme Court's decisions in *Salazar v. Allstate Ins. Co.,* 702 A.2d 1038, 1044 (Pa. 1997), and *Donnelly v. Bauer,* 720 A.2d 447, 454 (Pa. 1998).  *See Nationwide Mut. Ins. Co. v. Heintz,* 804 A.2d at 1217.

[14]The main issue in *Tukovits* was whether the insured had knowingly and voluntarily reduced in writing UM/UIM coverage.

been issued "under section 1731" because it did not exist until October 1, 1984.  Therefore, the district court held that when the MVFRL when into effect, the insured's UM/UIM coverage limits were automatically increased to the limits of liability for bodily injury.  *Dang,* 1996 WL 421942, at *2.

Based on *Tukovits* and *Dang*, the Court concludes that the 1984 Application does not constitute a "writing" within the meaning of Section1734.  The 1984 Application contains only limits for UM coverage, therefore, Plaintiff's signature on that application can only be deemed a writing as to UM limits.  Moreover, UIM coverage was not required prior to the enactment of MVFRL.  It is of no moment, therefore, that State Farm had a policy of providing UIM coverage equal to UM coverage limits pre-MVFRL, even though it was not required to do so.  The record is completely void of any evidence to show that at the time Mr. McKnight signed the 1984 Application, information regarding the provision and amount of UIM coverage was communicated to him.  This fact alone distinguishes this case from *Ciccarella*,[15] upon which State Farm mistakenly relies.

Additionally, even if the 1984 Application was construed to include a written reduction of UIM coverage limits, which it does not,  the reduced UIM coverage limits are not valid post-MVFRL.  Under *Tukovits,* the automobile policy issued to Mr. McKnight based on the 1984 Application was issued pre-MVFRL and therefore, was not issued under Section 1731.  Moreover, Plaintiff never *selected* UIM coverage at any level, let alone at the $15,000/30,000 level.  S t a t e Farm provided UIM coverage pursuant to its own internal policy, not at the request of Mr.

---

[15]In *Ciccarella*, the district court held that "[t]he initialing by the insured of the reduced UIM limits in the section provided for selecting that option, in conjunction with the signed acknowledgments that they understood the benefits available and had made the selections noted, satisfies the written request requirement of § 1734."  2002 WL 827138, at *5.

McKnight.   State Farm's reliance on *Gillespie* to suggest otherwise is misplaced.   Although *Gillespie* also involved an automobile policy issued prior to the MVFRL, the district court in that case did not find that the pre-MVFRL policy satisfied the Section 1734 writing requirement. Accordingly, when the MVFRL went into effect, Mr. McKnight's coverage limits were automatically increased to the limits of liability for bodily injury.   *Tukovits,* 672 A.2d at 791; *Dang,* 1996 WL 421942, at *2.

Thus, the only remaining issue is whether there was a subsequent written reduction request that satisfies Section1734, which brings the Court to the second issue, *i.e.,* whether issuance of the Section 1791 notice and payment of insurance premiums at reduced coverage limits constitutes an effective written reduction of UIM benefits under Section 1734 of the MVFRL. State Farm contends that Plaintiff made a knowing and intelligent waiver of his right to higher UM/UIM coverage when he continued to pay his premiums year after year at the reduced coverage limits.[16]   State Farm notes that numerous courts have held that the writing requirement of Section 1734 is satisfied where an insured has either remitted checks to the insurer for the lower premium amount reflecting reduced UM/UIM coverage limits, or signed a form electing to retain lower UIM coverage limits. In support of this position, State Farm cites *Gillespie, supra*; *State Farm Mut. Auto. Ins.  Co. v. Vollrath,* No. 02-1257, 2004 WL 1447836, *1-3 (E.D.Pa. June 28, 2004), *aff'd*, No. 04-2937, 132 Fed. Appx. 414 (3d Cir. May 26, 2005); and *Young v. State Farm Mut. Auto. Ins. Co.,* No. 02-1113, 54 Fed. Appx. 365, 366-68, 2002 WL 31846193 (3d Cir. Dec. 20, 2002).   State Farm produced sixteen renewal notices between November 1997 and November 2005 showing the premium for UM/UIM coverage limits of $15,000/30,000 and claims Plaintiff remitted checks in full payment of the premiums.

---

[16]Related to this argument is State Farm's position regarding the notice prong of Section 1734.

Thus, State Farm maintains that the Section 1734 writing requirement has been met here and therefore, this Court should declare that the coverage limits for UIM in effect at the time of the accident are $15,000/30,000. In response, Plaintiff disputes that he had actual knowledge of the reduced coverage amount. Plaintiff also attempts to distinguish the cases cited by State Farm by arguing that in those cases, the policies provided UIM benefits prior to the enactment of the MVFRL, or that the insurers obtained signed selection forms and/or signed Section 1791 notices which set forth the actual UIM coverage limits, unlike the present case.

After reviewing the parties' briefs and pertinent case law, the Court concludes that under the facts presented here, the issuance of the Section 1791 notice and payment of renewal premiums does not constitute an effective written reduction of UIM coverage limits under Section 1734.

In reaching this conclusion, the Court finds the Pennsylvania Superior Court's decisions in *Emig* and *Hayes v. Harleysville Mut. Ins. Co.,* 841 A.2d 121 (Pa. Super. 2003), persuasive. In *Emig,* the Pennsylvania Superior Court held that "in order for the conclusive presumption of Section 1791 to be effective, an insured must have actually selected coverage(s), and the selection process must first be in conformity with the law, *i.e.,* in this case, with Section 1734." 664 A.2d at 569 (footnote omitted). Comparing the interrelationship between Sections 1734 and 1791, the Superior Court explained:

> The "Important Notice" [under Section 1791] merely informs [the insured] that she is presumed to know and understand those benefits offered *and* those benefits which she has selected in conformity with law, *i.e.,* in this case, Section 1734. If [the insured] has not selected reduced UM/UIM coverages in conformity with Section 1734, she cannot be presumed to have knowledge and understanding of them. . . . Given the distinct legislature purposes of the two statutes relative to the facts at bar, the conclusive presumption of Section 1791 is not triggered unless and until the statutory mandate of Section 1734 has

16

first been fulfilled.  Since the latter event has not occurred here, the
conclusive presumption of Section 1791 has no application to these
facts.

664 A.2d at 569-70.[17]  The Superior Court in *Emig* concluded that neither the insured's signature at

the end of the change request form, on which the insurance agent wrote in the reduced amounts of

UM/UIM coverages, nor the insurance agent's act of filling in the UM/UIM coverages and writing

"Reduce" on the form, were sufficient to fulfill the requirement of a request in writing under Section

1734.  *Id.* at 565.  The court found the evidence showed the insured did not request in writing a

reduction in her UM/UIM coverage, and therefore, her insurance agent lacked authorization to write

in on the change request form reductions to the UM/UIM coverages.  *Id.*  The court also found

significant the fact that the section entitled "UM/UIM Rejection or Reduction" was left completely

blank, despite the instructions accompanying that section.  *Id.*  Accordingly, because it determined

that the insured did not select lower UM/UIM coverage in conformity with Section 1734, the

Superior Court held that the conclusive presumption of Section 1791 did not apply.  *Id.* at 569-70.

In *Hayes,* the insurer issued an automobile insurance policy in February 1985 with bodily

injury limits of $100,000, and a declaration sheet showing UIM coverage limits of $ 35,000.  The

insured had not signed the required Section 1734 selection form at the time the policy was issued in

---

[17]In *Emig,* when the insured's policy came up for renewal in 1990, she requested an increase in
her UM/UIM coverage limits to $50,000.  The declaration sheet issued upon renewal showed the
increased UM/UIM coverage equal to her bodily injury liability limits.  Subsequently, the insured added
a new car to her policy and completed a casualty policy change request form.  On the change request
form, under the section entitled "Add Coverage Same As On Policy," an "x" was placed next to the box
for UM/UIM and the numbers "15" and "30" were written in the blanks.  Also in this section, the
"UM/UIM/BI" box was circled and the word "Reduce" was written in the box.  The writing in this
section was made by the insurance agent, not the insured.  Another section on the change request form
was entitled "UM/UIM Rejection or Reduction," and was left blank, including the signature line.  The
insured's signature appeared, however, at the end of the change request form.  Thereafter, the insured
was involved in a motor vehicle accident and filed a claim for UIM benefits with her insurer, who
contended that her UIM limit was $15,000, not $50,000.  664 A.2d at 561, 564-65.

1985.[18]  Semiannually, for the five years following the issuance of the policy, the insurer sent renewal forms accompanied by declaration sheets and premium statements.  The insured paid each premium statement when due.  841 A.2d at 123.  After the amendments to the MVFRL in 1990, the insurer sent the insured the Section 1791 notice, along with a selection form containing premium reduction options, including a reference to UIM coverage, which he completed and signed.  With regard to the UIM coverage, the insured checked off a box indicating that he wished to continue his current UIM coverage, however, the form did not indicate the current limits of coverage.  *Id.* at 126.  Subsequently, the insured paid semiannual renewal premiums for the reduced UIM coverage.  *Id.* at 123.

The Pennsylvania Superior Court in *Hayes* held that because the 1985 selection form was not signed by the insured, the insurer was never authorized to reduce the UIM coverage limit, and therefore, the trial court properly reformed the UIM coverage to the amount of the bodily injury coverage for the period 1985 to 1990.  *Id.* at 127.  The Superior Court further concluded that the insured's signature on the 1990 premium reduction selection form was not a valid reduction of the UIM limits because the insurer did not establish that the insured had knowledge that the policy was issued with only $35,000 of UIM coverage, and therefore, his UIM coverage from 1990 on was also equal to the bodily injury coverage.  *Id.*

With regard to the insurer's argument that the insured was presumed to know of the $35,000 limit on UIM coverage, the Superior Court opined:

> This Court has held that there is a presumption that an insured had knowledge of their UIM coverage limit if the insurer has issued an Important Notice pursuant to 75 Pa.C.S.A. § 1791, and if the insured

---

[18]However, the Section 1734 selection form was signed by the insurance agent.

> has made premium payments following receipt of the Important
> Notice. *Breuninger v. Pennland Ins. Co.,* 450 Pa. Super. 149, 675
> A.2d 353, 357 (1996).  We have further held that "in order for the
> conclusive presumption of Section 1791 to be effective, an insured
> must have ***actually selected coverage***, and the selection process must
> be in conformity with Section 1734, *i.e., the **insured** must have
> requested **in writing** a lower UM/UIM coverage." *Id.* at 357
> (emphasis added).

841 A.2d at 126.  Thus, applying the above precedent to the facts of *Hayes,* the Superior Court held

the presumption did not apply, even though the insurer issued the Section 1791 notice and the

insured made several premium payments following the receipt of the notice.  The Superior Court

explained that the presumption was invalid because the insured did not provide the insurer with a

written request selecting lower UIM coverage limits in 1985 and therefore it could not be presumed

that the insured had knowledge that his policy had UIM limtis of $ 35,000.  *Id.*[19]

Like the insured in *Hayes* and *Cebula*, Plaintiff here never provided a written request

selecting lower UIM coverage, and even though he paid the premiums associated with the reduced

UIM coverage for a number of years, he was never informed of the amount of reduced UIM coverage

with regard to the Section 1791 notice.  Therefore, because McKnight never provided State Farm

with a written request to lower UIM coverage, it cannot be presumed that McKnight actually knew

---

[19]The Superior Court distinguished a federal court decision, *Dang v. State Farm Mut.  Auto. Ins. Co.,* No. 96-411, 1996 WL 421942, *2, (E.D. Pa. July 19,1996), upon which the insurer in *Hayes* relied, for the proposition that the insured had actively selected the reduced UIM coverage limit by paying premiums computed on the reduced coverage limit. As the Superior Court aptly noted in *Hayes*, the insured in *Dang* was clearly advised on the Section 1791 form that payment of the reduced premium would lower the coverage to $15,000/30,000.  *Hayes,* 841 A.2d at. 127.  In *Hayes,* the premium reduction form did not indicate the amount of coverage the insured would receive if he answered "yes" to the question: Do you want to continue with your current UM/UIM limits?  *Id; compare Cebula v. Royal & SunAlliance Ins. Co.,* 158 F.Supp. 2d 455, 460 (M.D.Pa. 2001) (citing *Breuninger,* 675 A.2d at 357) (holding that even though insured paid premiums for several years for reduced UM/UIM coverage, because he had not signed the Important Notice, the payment of premiums did not operate as a waiver under § 1734 or § 1791).

his UIM coverage limits were $15,000/30,000.

Nonetheless, State Farm argues that because Plaintiff paid the renewal notices at the reduced premium levels for 22 years, this constitutes an effective waiver under Section 1734. The cases cited by State Farm in support of this proposition are distinguishable on their facts and therefore, are not dispositive here. For example, in *State Farm Mut. Auto. Ins. Co. v. Gillespie,* 342 F.Supp.2d 317 (E.D.Pa. 2004), *aff'd* 152 Fed. Appx. 201, 2005 WL 2739910 (3d Cir. Oct. 25, 2005), the district court's finding that the insured elected in writing reduced UM/UIM coverage under Section 1734 was based on the combination of: (1) the contents of the first renewal notice issued after October 1, 1984, (2) the insured's testimony that he paid lower premiums to select the same UIM coverage that he had prior to enactment of the MVFRL, (3) payment of reduced premiums over a sixteen year period, and (4) no record of any request for higher benefits. 342 F.Supp. 2d 323. Of important note is the language of the first renewal notice sent to the insured after October 1, 1984. That notice specifically informed the insured that UM coverage has been replaced with new UM and UIM coverage with limits equal to the bodily injury limits. It further instructs that if the insured desires these coverage limits, to pay the amount due on the invoice. In addition, the renewal notice instructs that if the insured wants UM/UIM coverage *at the previous coverage limits of $15,000/30,000*, to pay a lower amount. *Gillespie,* 342 F.Supp. 2d at 323 (emphasis added).[20]

---

[20]The other cases cited by State Farm are similarly distinguishable. *See, Young v. State Farm Mut. Auto. Ins. Co.,* 54 Fed. Appx. at 366-68) (insured signed § 1791 Important Notice and binder portion of the application acknowledging that he had read the application and chose the limits himself, and insured's initials directly below UIM box with "15/30" written in was a valid waive down under § 1734); and *State Farm Mut. Auto. Ins. Co. v. Vollrath,* 2004 WL 1447836, at *1-3 (pre-MVFRL policy with UM limits of 15/30; first premium notice post-MVFRL specifically informed insured of the amount of previous limits of 15/30, and indicated the amount of premium associated with that level of coverage; insured paid premium amount due for previous coverage limits of 15/30 from 1985 to 2002; and insured signed a Notice to named Insureds in 1990 stating that he wanted to retain his current stacking of UIM coverage with limits of 15/30 at premium of $13).

By contrast here, State Farm has not produced a renewal notice in this case similar to the one at issue in *Gillespie*. The only notice provided by State Farm is a form Section 1791 notice dated 8/84 sent to all of its insured via an automated mailing system; it does not contain Plaintiff's signature. It also appears that State Farm issued an endorsement (S.F. 6885A.1 Uninsured Motor Vehicle and Underinsured Motor Vehicle–Coverage U) informing its insureds that it was adding UM/UIM coverage U to the policy and terminating any coverage U or U1 previously provided under the policy. (Ex. A to Lenard Aff. I.)[21] Neither the Section 1791 notice nor the endorsement sent by State Farm informs Mr. McKnight of the amount of the previous coverage limits or the premium associated with that coverage. In addition, Plaintiff's wife, Marcia McKnight, testified at her deposition that she and her husband thought they had full coverage, not reduced coverage. (Deposition of Marcia McKnight dated 4/7/06 ("M. McKnight Dep.") at 24.)

Indeed, in those cases which have held that by paying premiums for reduced coverage over a number of years the insured has elected reduced limits of UM/UIM coverage under Section 1734, the insureds were actually informed of the amount of the reduced UM/UIM coverage and premium associated with those reduced limits. In the case at bar, State Farm has not adduced any evidence to suggest that Plaintiff was aware that he was paying premiums for reduced coverage. Although the renewal notices indicated the coverage limits at 15,000/30,000 for UM/UIM, this alone is insufficient to satisfy the writing requirement of Section 1734. Mr. McKnight testified that he did not look at the renewal notices, he was only interested in the invoices. Further, he did not actually

---

[21]It is not clear when State Farm provided this endorsement to its insureds, *i.e.,* whether it was included with the Section 1791 notice first sent out after October 1, 1984. Nor does the record contain any evidence suggesting that this notice was distributed according to the automated mailing system or that Mr. McKnight actually received this notice.

write out the checks for payment of the premium, his wife took care of that. (J. McKnight Dep. at 26; M. McKnight Dep. at 8-10.)[22]

Accordingly, based on these facts and the Superior Court's holdings in *Emig* and *Hayes,* the Court concludes that Mr. McKnight did not actually select the reduced coverages, and therefore, the conclusive presumption does not apply. Morever, without proof of actual knowledge of the amount of the reduced limits of coverage and a signature by the insured on the checks, the Court is constrained to find that a writing which satisfies the requirements of Section 1734 simply does not exist here.[23]

In summary, State Farm admits that the only "writing" that exists is the 1984 Application. Since the 1984 Application does not constitute a written request for a reduction in UIM coverage, and no other writing exists, then by operation of law, specifically, Section 1734, a valid written request for a reduction in UIM coverage does not exist. Moreover, the Court finds that the issuance of the Section 1791 notice, which does not state the amount of coverage limits, and payment of premiums for reduced coverage by someone other than the named insured, does not constitute an effective written reduction of UIM coverage limits under Section 1734. Consequently, the Court finds that the limits of UIM coverage under Mr. McKnight's policy are equal to the limits of liability for bodily injury.[24]

_____

[22]Marcia McKnight testified that she initially wrote checks for the premium renewals but at some point five years prior to the accident, they converted to having State Farm make automatic deductions directly from their checking account once a month to pay the premiums. (M. McKnight Dep. at 8-10.)

[23]Although the Pennsylvania Supreme Court in *Lewis* indicated that the Section 1734 writing may take any form, that court also held that at a minimum, the writing must indicate the amount of coverage being selected. That information is missing here.

[24]While recognizing the intent of the Pennsylvania legislature in enacting the MVFRL was to reduce the rising costs of automobile insurance, the Court also notes that the legislature provided in the

III.    **CONCLUSION**

For the reasons set forth above, it is respectfully recommended that the Motion for Summary Judgment filed by Plaintiff, James A. McKnight be granted, and that the Motion for Summary Judgment filed by Defendant, State Farm Mutual Automobile Insurance Company, be denied.

In accordance with the Magistrates Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation.   Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.


Dated:  August 24, 2007                    By the Court:


                                        ____s/Lisa Pupo Lenihan____
                                        Lisa Pupo Lenihan
                                        U.S. Magistrate Judge

cc:     Judge Terrence F. McVerry
        United States District Court

        All Counsel of Record
        *Via Electronic Mail*

---

MVFRL certain remedies or default levels of coverage when insurance companies fail to follow the letter of the law.  Thus, although the Court's conclusion here may not appear to be an equitable one, given that Plaintiff paid premiums for a reduced level of coverage, the legislature nonetheless appears to have accepted this inequity by allowing coverage equal to the limits of bodily injury where the insurer fails to obtain a written reduction request that satisfies Section 1734.